## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **LOUIS M. GERSON COMPANY, INC.,** <br><br> **Plaintiff,** <br><br> v. <br><br> **3M COMPANY,** <br><br> **Defendant.** | **Civil No. 04-12389 (MLW/RBC)** <br><br> **3M COMPANY'S COMBINED MEMORANDUM OF LAW (1) IN SUPPORT OF ITS MOTION TO DISMISS GERSON'S AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1) AND (2) IN OPPOSITION TO GERSON'S MOTION TO SUPPLEMENT THAT COMPLAINT** |

On December 7, 2004, 3M Company ("3M") filed a covenant not to sue Louis M. Gerson Company ("Gerson") or its customers under each of the 15 patents identified in the amended complaint -- United States Patent Nos. 6,752,179 ("the '179 patent"); 6,488,058 ("the '058 patent"); 6,595,441 ("the '441 patent"); 4,971,251 ("the '251 patent"); 6,588,681 ("the '681 patent"); 4,936,511 ("the '511 patent"); 6,663,018 ("the '018 patent"); 6,796,514 ("the '514 patent"); 6,354,346 ("the '346 patent"); 5,425,404 ("the '404 patent"); 6,367,521 ("the '521 patent"); 6,450,214 ("the '214 patent"); 6,223,791 ("the '791 patent"); 5,954,273 ("the '273 patent"); and 5,826,795 ("the '795 patent") -- in connection with past or present paint system products. Under controlling Federal Circuit authority, 3M's covenant not to sue removed any reasonable apprehension that Gerson would face an infringement suit under these patents. *See, e.g.*, *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995); *see also, In re Columbia Univ. Patent Litig.*, No. 04-1592, 2004 WL 2490619, at *6-13 (D. Mass. Nov. 5, 2004) (Wolf, J.); *SVG Lithography Sys., Inc. v. Ultratech Stepper, Inc.*, 334 F.Supp.2d 21, 23-26 (D. Mass. 2004) (Wolf, J.). Thus an actual controversy does not exist, the Court lacks

subject matter jurisdiction over this lawsuit, and the Court must therefore dismiss the complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).

Alternatively, should the Court determine that 3M's covenant fails to dispose of all relevant claims on the 15 patents at issue, Gerson's amended complaint should still be dismissed for lack of jurisdiction because Gerson did not possess a reasonable apprehension of suit when it filed that complaint. Gerson's lack of any reasonable apprehension of suit is an independent basis for dismissal of Gerson's amended complaint.

Finally, knowing that 3M was filing a covenant not to sue on the only patents Gerson had put at issue, Gerson has now filed a motion seeking leave to "supplement" its amended complaint to add a 16th patent, United States Patent No. 6,820,824 ("the '824 patent"). However, since 3M had filed a prior action in the District of Minnesota alleging infringement by Gerson of the '824 patent, Gerson's motion to supplement here is plainly improper under first-to-file principles and cannot operate either to divest the Minnesota Court of jurisdiction or to belatedly confer jurisdiction on this Court.

In short, despite Gerson's efforts to saddle this Court first with an unnecessary suit (as to the 15 patents in the amended complaint) and then an improper one (as to the '824 patent, which is being litigated elsewhere), this Court should dismiss Gerson's amended complaint with prejudice and deny its motion to supplement.

I.  **BACKGROUND**

This is a declaratory judgment action under 28 U.S.C. § 2201(a). On November 10, 2004, without any prior communication with 3M on the subject, Gerson filed its first complaint, seeking a declaration that the '441 patent is invalid, unenforceable and void, and not infringed by Gerson's paint system products. (Compl. ¶ 5,8). On Monday November 22, in compliance with

2

local rule 7.1(a)(2), 3M contacted Gerson to discuss dismissal of the case based on 3M's proposed filing of a covenant not to sue Gerson based on Gerson's past and present paint system products ("the '411 Covenant")[1].  In response to a request from Gerson counsel, 3M provided to Gerson on the evening of November 22nd the language of the proposed '411 Covenant and 3M's draft memorandum in support of a motion to dismiss based on that covenant.  When, on November 23, Gerson subsequently informed 3M that Gerson would not accept the '411 Covenant, 3M filed the '411 Covenant along with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) ("Motion to Dismiss").

Meanwhile, having been informed of 3M's intention to file the '411 Covenant and its motion to dismiss, and without 3M's knowledge, Gerson had filed an amended complaint earlier the same day -- November 23 -- in an attempt to preempt 3M's filing.  Despite the fact that Gerson's counsel never mentioned any patents other than the '441 patent during the parties' November 22 conference, the amended complaint sought a declaration that 14 additional 3M Patents "are invalid, unenforceable, void, and not infringed by plaintiff."  (Am. Compl. ¶8).

Although Gerson repeated, in the amended complaint, its attempt to comply with the requirements of the Declaratory Judgment Act by alleging that "3M[ ] has asserted that paint system products manufactured, offered for sale and/or sold by plaintiff, Gerson, infringe 3M's patents," *id.* at ¶5, Gerson did not allege that any intervening events since the filing of the original complaint on November 10 gave rise to its alleged apprehension of suit on the 14 new

---

[1] The facts recounted here are drawn from the accompanying Declaration of Frank Scherkenbach In Support of 3M's Motion to Dismiss and In Opposition to Gerson's Motion to Supplement.

3

patents. Publicly available Patent Office records show one of the 15 patents now identified by Gerson (the '511 patent) to be abandoned for failure to pay maintenance fees.

Separately, but also on November 23, 2004, 3M filed suit in the District of Minnesota against Gerson for infringement of United States Patent No. 6,820,824 ("the '824 patent"). *3M Innovative Props. Co. v. Louis M. Gerson Co.*, No. 04-4859 (D. Minn. filed November 23, 2004). Since the suit was filed on the same day that the '824 patent was issued by the Patent Office, Gerson did not have and could not have had any knowledge of the '824 patent and therefore no reasonable apprehension that it would be sued for infringement of this patent.

On December 6, 2004, 3M counsel again contacted Gerson counsel, in accordance with local rule 7.1(a)(2), to discuss the new allegations in Gerson's amended complaint and to propose providing a new covenant that would include the 14 additional patents. Gerson declined to provide the specifics of its alleged basis for fearing suit on the patents, saying only that unspecified 3M employees had allegedly threatened unspecified Gerson customers with suit on unspecified 3M patents.

Gerson did, however, offer to entertain a renewed covenant that would include the 14 new patents in addition to the '441 patent. 3M sent such a draft covenant to Gerson counsel, who responded with an edited version. The edited covenant sought to add 3M Innovative Properties Company as a party, to extend the covenant to future Gerson products, and to convert the resulting dismissal into one without prejudice. 3M agreed to the addition of 3M Innovative Properties Company, which owns the patents. However, 3M declined to grant a covenant as to future, unknown Gerson products and declined to agree to a dismissal without prejudice, which would leave Gerson free to repeat the chain of events that led to the present situation.

4

Therefore, on December 7, 2004, 3M filed and served on Gerson the following Covenant Not to Sue ("Amended Covenant"):

> 3M Company and 3M Innovative Properties Company, its successors and assigns, hereby covenant not to assert any claim of patent infringement against Louis M. Gerson Company, Inc. or its customers under United States Patent Nos. 6,752,179 ("the '179 patent"); 6,488,058 ("the '058 patent"); 6,595,441 ("the '441 patent"); 4,971,251 ("the '251 patent"); 6,588,681 ("the '681 patent"); 4,936,511 ("the '511 patent"); 6,663,018 ("the '018 patent"); 6,796,514 ("the '514 patent"); 6,354,346 ("the '346 patent"); 5,425,404 ("the '404 patent"); 6,367,521 ("the '521 patent"); 6,450,214 ("the '214 patent"); 6,223,791 ("the '791 patent"); 5,954,273 ("the '273 patent"); and 5,826,795 ("the '795 patent"), as they presently read, with respect to (1) any paint system product currently used, manufactured, offered for sale, or sold by Louis M. Gerson Company, Inc; or (2) any paint system product which was used, manufactured, offered for sale, or sold by the Louis M. Gerson Company, Inc. prior to the date of this covenant.
>
> This covenant is limited to the '179, '058, '441, '251, '681, '511, '018, '514, '346, '404, '521, '214, '791, '273, and '795 patents as they presently read and does not apply to any other patent, whether related or unrelated to the '179, '058, '441, '251, '681, '511, '018, '514, '346, '404, '521, '214, '791, '273, and '795 patents.

The Amended Covenant removes any reasonable apprehension that Gerson will face an infringement suit under the 15 patents identified in the amended complaint, based on its past or present activity.

Knowing that 3M was proceeding with the filing of the Amended Covenant, and also on December 7, Gerson filed an Opposition to 3M's motion to dismiss the **original complaint**, and a motion under Federal Rule of Civil Procedure 15(d) to "Supplement the Amended Complaint and to Add a Necessary Party." The motion to supplement seeks leave to "supplement" the amended complaint to (1) add 3M Innovative Properties Company as a party, which Gerson already knew was acceptable to 3M and (2) add the '824 patent, which Gerson already knew was the subject of a prior pending suit in Minnesota. 3M was not informed of these filings until it received electronic notice from the Court, and Gerson's motion to supplement lacks the certificate required by local rule 7.1(a)(2).

Finally, on December 9, 2004, Gerson filed two motions in the District of Minnesota entitled "Defendant's Motion to Dismiss Under Rule 12(b)(2) for Lack of Personal Jurisdiction" ("Minnesota Personal Jurisdiction Motion"), and "Defendant's Motion to Dismiss, Stay or Transfer this Action Pursuant to the First-To-File Rule" ("Minnesota First-To-File Motion").

## II.   LEGAL ANALYSIS

### A.   To Sustain Declaratory Judgment Jurisdiction, An Actual Controversy Is Required

Subject matter jurisdiction exists over a declaratory judgment action only when there is an "actual controversy." 28 U.S.C. § 2201(a); *Gen-Probe Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1379 (Fed. Cir. 2004) ("The Declaratory Judgment Act only supports jurisdiction in the event of an 'actual controversy.'").[2] An actual controversy must exist at all stages of a case, not simply at the time the complaint was filed. *See, e.g.*, *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334 (1975). The declaratory plaintiff must establish the existence of subject matter jurisdiction. *Spectronics Corp. v. H.B. Fuller Co., Inc.*, 940 F.2d 631, 634-35 (Fed. Cir. 1991) ("[A] declaratory judgment plaintiff must establish an actual controversy . . . ."). Whether jurisdiction exists under the Declaratory Judgment Act is a question of law determined as of the time the complaint was filed. *BP Chem. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993).

In the context of declarations of patent rights, the Federal Circuit has established a two-part test for determining whether an actual controversy exists:

---

[2] Federal Circuit law governs actions for declaration of patent rights. *Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) ("[W]e have held that Federal Circuit law applies to questions such as . . . whether there is a sufficient controversy between the parties to permit an accused infringer to bring an action seeking a declaratory judgment of patent noninfringement or invalidity . . . .").

> There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*Id.*. The purpose of this test is "'to determine whether the need for judicial attention is real and immediate,' in which case the federal courts have jurisdiction, or whether it is 'prospective and uncertain of occurrence,' in which case they do not." *Super Sack*, 57 F.3d at 1058 (quoting *BP Chem.*, 4 F.3d at 978).

### B.    Covenants Not to Sue Remove Any Reasonable Apprehension of Suit and Therefore Remove Any Actual Controversy

The Federal Circuit has consistently held that a proper covenant not to sue in the context of a suit to declare patent rights divests a court of subject matter jurisdiction. *Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1340-42 (Fed. Cir. 2001); *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855-56 (Fed. Cir. 1999); *Super Sack*, 57 F.3d at 1058-59; *Spectronics*, 940 F.2d at 636.  In *Super Sack*, for example, the Federal Circuit approved the following covenant not to sue: "Super Sack will unconditionally agree not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase." 57 F.3d at 1056 (emphasis omitted).  Based on this covenant, the Federal Circuit concluded that "Chase can have no reasonable apprehension that it will face an infringement suit," and, therefore, the covenant "remove[d] from the field any controversy sufficiently actual to confer jurisdiction." *Id.* at 1059.  Likewise, in *Amana*, the Federal Circuit held that the defendant's "promise not to assert any infringement claim against Amana under the patent as it presently reads, with respect to any product previously or currently advertised, manufactured, marketed, or sold by Amana, removed any reasonable apprehension that Amana will face an infringement suit." 172 F.3d at 855.  Thus, it was "clear that no controversy survive[d] the [defendant's] covenant." *Id.*

7

Consistent with the Federal Circuit's unequivocal rulings, this District has repeatedly held that a covenant not to sue strips a court of subject matter jurisdiction when considering a suit to declare patent rights. *In re Columbia Univ. Patent Litig.*, No. 04-1592, 2004 WL 2490619, at *6-13 (D. Mass. Nov. 5, 2004) (Wolf, J.); *SVG Lithography Sys., Inc. v. Ultratech Stepper, Inc.*, 334 F.Supp.2d 21, 23-26 (D. Mass. 2004) (Wolf, J.); *Vision Biosystems (USA) Trading Inc. v. Ventana Med. Sys., Inc.*, No. 03-10391, 2004 WL 2387284, at *10-11 (D. Mass. Sept. 30, 2004). Indeed, earlier this month, this Court again held that a covenant not to sue removed the alleged basis for jurisdiction in a patent declaratory judgment action:

> Columbia's covenant not to sue any plaintiff on any 'claims in the '275 patent as they currently read, and any claim in any reissued or reexamined patent that is the same as, or substantially identical to any claim of the '275 patent as it currently reads' means that plaintiffs do not now have the required reasonable apprehension that they will face an infringement suit . . . . Therefore, no case or controversy now exists in any of these actions.

*In re Columbia*, 2004 WL 2490619, at *7; *accord SVG Lithography*, 334 F.Supp.2d at 23-26.

### C. The 3M Amended Covenant Divests This Court of Subject Matter Jurisdiction

The amended complaint asks for a declaration on the '179; '058; '441; '251; '681; '511; '018; '514; '346; '404; '521; '214; '791; '273; and '795 patents. As the sole basis for its "reasonable apprehension" that it will be sued on these patents, Gerson generically alleges that 3M has asserted that Gerson paint system products infringe "3M's patents." (Am. Compl. ¶5). The 3M Amended Covenant, however, removes any alleged apprehension of suit based on the listed patents. *Gen-Probe*, 359 F.3d at 1379. As mentioned above, the *Amana* covenant provided:

> [Quadlux covenants] not to "assert any claim of patent infringement against Amana under [the '005 patent] as it presently reads, with respect to any product currently advertised, manufactured, marketed or sold by Amana, or any product which was advertised, manufactured, marketed or sold by Amana prior to the date of this declaration."

8

172 F.3d at 855. The 3M Amended Covenant (reproduced in relevant part above) is substantially similar in scope to the *Amana* covenant, and specifically addresses the three acts (manufacture, offer for sale, and/or sale) purportedly giving rise to Gerson's apprehension of suit. Indeed, the 3M Amended Covenant goes further and includes "use" as well. Thus, the 3M Amended Covenant removes any apprehension of suit on the part of Gerson as to its present and past activities with respect to the 15 patents listed in the Amended Complaint. *Amana*, 172 F.3d at 855 ("[I]t is clear that no controversy survives the Quadlux covenant."); *Super Sack*, 57 F.3d at 1058-59.

By filing the Amended Covenant, 3M and its successors or assigns are forever estopped from asserting patent infringement claims under the '179; '058; '441; '251; '681; '511; '018; '514; '346; '404; '521; '214; '791; '273; and '795 patents against Gerson or its customers based on Gerson's current and past paint system products. "This estoppel, in turn, removes from the field any controversy sufficiently actual to confer jurisdiction over this case." *Super Sack*, 57 F.3d at 1059. In the words of this Court, "[t]his case is materially indistinguishable from *Super Sack* and *Intellectual Property Development*." *SVG Lithography*, 334 F.Supp.2d at 25. Since there is no actual controversy, dismissal is constitutionally required. *See, e.g.*, *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40, 57 S.Ct. 461 (1937). Should this Court proceed, it would be "rendering a forbidden advisory opinion." *Spectronics*, 940 F.2d at 638.

### D. Gerson is Not Entitled to a Declaration of Rights as to Unknown Future Gerson Products

In its Opposition to Defendant's Motion to Dismiss ("Opposition"), Gerson urges that a covenant is ineffective unless it reaches potential future products. (Opposition at 2) ("a proper covenant not to sue should extend to . . . any paint system product which is substantially equivalent to [Gerson's past and present] the paint system products.") Gerson cannot cite a

9

single case in support of this proposition. In fact, it is contrary to controlling case law, which makes clear that a patentee need not covenant with respect to any future products or activities .

The Federal Circuit has expressly stated that "the second part of our test of declaratory justiciability respecting patent rights requires that the putative infringer's '*present* activity' place it at risk of infringement liability." *Super Sack*, 57 F.3d at 1059 (emphasis in original). Under this rule, "[t]he residual possibility of a future infringement suit based on [plaintiff's] future acts is simply too speculative a basis for jurisdiction over [plaintiff's] counterclaim for declaratory judgment of invalidity." *Id.* at 1060. Thus, any subjective worries about infringement suits concerning undefined future products do not confer declaratory judgment jurisdiction. *Amana*, 172 F.3d at 855-56 ("An actual controversy cannot be based on a fear of litigation over future products."); *Super Sack*, 57 F.3d at 1059 (same); *SVG Lithography*, 334 F.Supp.2d at 25-26 (same); *Vision Biosystems*, 2004 WL 2387284, at *10 (same).

Stated another way, while Gerson would like a license from 3M for unknown future activity, 3M is not required to provide it. Gerson is not entitled to ask this Court for an advisory opinion in order to resolve the issue of future activity, and Gerson is not entitled to have a suit perpetually on file in Boston so that it can periodically amend the complaint to sweep in future activities.

### E. Gerson Also Never Possessed An Objectively Reasonable Apprehension of Suit as to the 15 Patents Listed in the Amended Complaint, So Dismissal is Required for This Independent Reason

Should the Court determine that the Amended Covenant does not fully dispose of the claims presented in the amended complaint, dismissal is still required because Gerson did not possess a reasonable apprehension of suit on the specified patents upon filing for declaratory judgment. *See BP Chems.*, 4 F.3d at 978.

In the amended complaint, Gerson vaguely alleges that "3M[ ] has asserted that paint system products manufactured, offered for sale, and/or sold by plaintiff Gerson infringe *3M's patents*." (Am. Compl. ¶ 5 (emphasis added)). In its Minnesota filings, Gerson admits that "[t]he Gerson Company had never been sent a single letter suggesting an imminent lawsuit . . . ." (Scherkenbach Dec. Ex. A (First-To-File Memorandum) at 9-10). Instead, Gerson purports to rely solely upon "chilling reports from nervous customers and sales representatives." *Id.* at 10.

As to the 15 patents listed by Gerson in the amended complaint, Gerson simply alleges that "3M[ ] claims to be the owner of patents relating to paint systems including [the 15 identified patents]." (Am. Compl. ¶6). Gerson fails to provide any link between the "3M patents" allegedly "asserted" to be infringed and the 15 patents identified in the amended complaint. In its motion to supplement, Gerson described this list of 15 patents as referring to "[s]ome of the patents in dispute." (Motion to Supplement at 1). In its motion in the District of Minnesota based on the first-to-file rule, however, Gerson describes its amended complaint as "seeking a declaration of non-infringement of the (*unspecified*) patents that 3M alleges the Gerson Company infringes." (Scherkenbach Dec. Ex. A (First-To-File Memorandum) at 4 (emphasis added)). Thus, according to Gerson, its apprehension of suit is based on an undefined number of patents owned by 3M that include the 15 patents listed in the amended complaint and unknown others.

"The 'reasonable apprehension of suit' test requires more than the nervous state of mind of a possible infringer; it requires that the objective circumstances support such an apprehension." *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995). Here, it is not even Gerson's own nervous state of mind that Gerson seeks to rely on – which itself would be insufficient -- but instead the state of mind of Gerson's "nervous

11

customers." (Scherkenbach Dec. Ex. A (First-To-File Memorandum) at 10). This is far too tenuous an allegation to sustain declaratory judgment jurisdiction. There are simply no "objective circumstances" that support an apprehension of suit by anyone, Gerson or its customers, based on the 15 patents identified by Gerson. To the contrary, the amended complaint fails to provide any link between purported allegations by 3M and the 15 listed patents, other than a vague relation to "paint system products." This is not sufficient to create a reasonable apprehension of suit based on any of the 15 patents. Gerson's Opposition to 3M's original motion to dismiss does nothing to correct this deficiency, because it says nothing at all about the basis for Gerson's alleged apprehension of suit even on the lone '441 patent then at issue.

The Court should be particularly skeptical of any after-the-fact attempt by Gerson to provide, in response to this motion, the sort of jurisdictional allegations Gerson should have provided from the start. If Gerson really had any basis for thinking it would be sued on the 14 new patents, it would certainly have included those patents in the original complaint. And if Gerson thought its fear of suit allegations were legitimate, it would have provided those allegations to 3M counsel when directly asked to do so.

There is still other objective evidence that Gerson did not actually fear suit based on the 15 listed patents: the '511 patent currently stands abandoned for failure to pay maintenance fees. (Scherkenbach Dec. ¶11). This information is publicly available from the U.S. Patent and Trademark Office. Rather than an actual apprehension of suit, the amended complaint shows an apparent attempt by Gerson to foist jurisdiction upon this Court by randomly selecting a number of patents assigned to 3M, without even knowing whether those patents are in force or relevant to Gerson's activities.

Finally, the nature of the interaction between Gerson and 3M related to this suit shows that there could be no reasonable apprehension of suit on any of these 15 patents. After Gerson filed the original complaint, 3M filed the '411 Covenant to effectively remove any apprehension of suit based on that patent. After learning of the amended complaint, 3M told Gerson that it would provide a covenant for the new patents as well. This behavior on the part of 3M evidences a desire to avoid litigation against Gerson on these patents. In view of the filing of the '411 Covenant and the Amended Covenant, Gerson simply cannot show that it ever had any reasonable apprehension of suit.

### F.     Gerson's Attempt to Supplement the Amended Complaint to Include Reference to the '824 Patent Does not Cure the Lack of Jurisdiction

As discussed above, one day after receiving a draft of the Amended Covenant from 3M (and without complying with the meet and confer requirements under local rule 7.1(a)(2) and the "reasonable notice" requirement under Fed. R. Civ. P. 15(d)), Gerson filed a motion to "supplement" its Amended Complaint to include the '824 patent. The motion to supplement, therefore, was filed the same day (December 7th) as the Amended Covenant was filed and served.[3] This filing fails to solve Gerson's jurisdictional problems for at least two reasons: the

---

[3] 3M notes that Gerson's attempted supplementation under Federal Rule 15(d) is not the proper procedure for trying to add the '824 patent. The paper that Gerson seeks to supplement is the amended complaint filed November 23, 2004. The event that Gerson seeks to include in the amended complaint through supplementation is the issuance of the '824 patent, which occurred earlier on the same day that Gerson filed its amended complaint. The express language of Rule 15(d), however, limits the use of that rule to events that "have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d); *see also*, *U.S. v. Russell*, 241 F.2d 879, 882 (1st Cir. 1957). Thus, the Court should treat Gerson's submission as a motion to amend under Federal Rule 15(a). *Structural Systems, Inc. v. Sulfaro*, 692 F.Supp. 34, 35-36 (D. Mass. 1988); *see also* Wright et al.*, Federal Practice & Procedure* § 1504 at 184 (1990).

13

Amended Covenant removed jurisdiction as of the time it was filed and served, and the '824 patent is already the subject of a prior pending case in another jurisdiction.

First, as a matter of law, the Amended Covenant became effective the instant it was served upon Gerson, because at that point the covenant removed any apprehension of suit and thus any actual controversy regarding the fifteen patents listed in the Amended Complaint. As the Federal Circuit said in *Amana*, "[defendant's] promise not to assert any infringement claim against Amana under the patent . . . *removed* any reasonable apprehension that Amana will face an infringement suit." 172 F.3d at 855 (emphasis added). In other words, the promise is effective when made.

On the other hand, Gerson's motion cannot be effective until and unless it is *granted* by the Court. Since Gerson's suit failed to meet the actual controversy requirement at least upon service of the Amended Covenant, in law Gerson no longer has any viable complaint to supplement. *See Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334 (1975) (actual controversy must exist at all stages of a case).

Second, and contrary to Gerson's allegations, the '824 patent never was put at issue in Gerson's pleadings here, but it has been at issue in the District of Minnesota since November 23, 2004. According to Gerson, "[a]mong the 3M patents in dispute because it is related to paint systems is US 6,820,824." (Motion to Supplement at 1). In its Minnesota filings, Gerson urges the court to "read" the "inclusive language" of its amended complaint to include the '824 patent. (Scherkenbach Dec. Ex. A (First-To-File Memorandum) at 4). But the '824 patent could not have been "in dispute" at the time Gerson filed the amended complaint, because Gerson was unaware of the existence of the patent at that time. Gerson cannot have had a reasonable apprehension of suit based on a patent it did not even know about. Thus, the '824 patent cannot

form any part of the basis of declaratory judgment jurisdiction at the time the amended complaint was filed.

Gerson's interpretation of the law would allow a declaratory judgment plaintiff who wants to secure home field advantage to keep an action perpetually on file, to be used at any time by appropriate amendment to capture any subsequent dispute with a competitor. There is simply no support in the law for such a speculative suit. To the contrary, the use of declaratory judgment actions for forum shopping has been criticized. *See Fed. Ins. Co. v. May Dept. Stores Co.*, 808 F. Supp. 347, 350 (S.D.N.Y. 1992) ("In fact, the misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action."), *accord*, *EMC Corp. v. Roland*, 916 F. Supp. 51, 53-54 (D. Mass. 1996) ("The Declaratory Judgment Act 'was not designed to countenance . . . procedural manipulation of forums and actions.'").[4]

Finally, of course, Gerson's motion to "supplement" would evade the first-to-file rule. There can be no dispute that 3M first put the '824 patent at issue by filing its suit in Minnesota on the day the '824 issued (November 23).[5] Therefore, given 3M's filing of the Amended

---

[4] As noted in *Moore's Federal Practice*, "[i]f a court finds that a declaratory judgment action was brought in anticipation of the coercive suit for the purpose of gaining the home court advantage, the coercive suit is usually given precedence." *Id.* § 57.42[3].

[5] In the Minnesota action Gerson urges that it possesses first-to-file status because its amended complaint included the '824 patent as one of the "unspecified" patents upon which it feared suit. (Scherkenbach Dec. Ex. A (First-To-File Memorandum) at 4). The '824 patent, however, did not suddenly become part of the amended complaint upon grant by the Patent Office. A declaratory judgment action must be based on a reasonable apprehension of suit. As discussed above, as of the filing of its amended complaint, Gerson did not possess the requisite apprehension based on the '824 patent. Instead, as admitted by Gerson, it was unaware of the existence of the '824 patent. *Id.*

Covenant, this Court is left with the simple issue of whether to allow an amendment that would merely create a later-filed declaratory judgment action. The answer is no – the first-filed suit should be allowed to proceed. *See Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000); *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.* 249 F.Supp.2d 12, 15 (D. Mass. 2002) (citing *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir.1993)); *EMC Corp.*, 916 F. Supp. at 53-54. Adding the '824 patent to this case, after the fact, would therefore be futile, and Gerson's motion to supplement should be denied on that basis. *Forman v. Davis*, 371 U.S. 178, 182 (1962); *Glick v. Koenig*, 766 F2d 265, 268-69 (7th Cir. 1985) ("The liberal amendment rules under Rule 15(a) do not require the courts to indulge in futile gestures."); *see also* Wright et al. *Federal Practice & Procedure* § 1487 at 643 (1990).

### III. CONCLUSION

Gerson never had any reasonable apprehension of suit on these 15 patents and, if it did, none survives the 3M Amended Covenant. Accordingly, there is no subject matter jurisdiction and Gerson's complaint should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(1). Gerson's attempt to add the '824 patent belatedly should also be rejected for the reasons stated above.

By its attorneys

Dated: December 20, 2004

/s/ Frank E. Scherkenbach
Frank E. Scherkenbach (BBO #653819)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA  02110

Attorneys for Defendant
3M COMPANY

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true copy of the foregoing 3M COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1) was served on counsel for Plaintiff via e-filing and regular mail on Robert L. Kann, Bromberg & Sunstein LLP, 125 Summer Street, Boston, MA 02110 on this 20th day of December, 2004.

                                                       /s/ Kathleen J. Tobin
                                             Kathleen J. Tobin