UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY ) <br> ) <br> and ) <br> ) <br> 3M COMPANY ) <br> Plaintiffs ) <br> v. ) <br> ) <br> LOUIS M. GERSON CO., INC. ) <br> Defendant ) <br> ) | Civil No. 04-4859JMR/FLN |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS, STAY OR TRANSFER THIS ACTION
PURSUANT TO THE FIRST-TO-FILE RULE**

The Defendant, Louis M. Gerson Company, Inc. (the "Gerson Company"), submits this Memorandum in support of Defendant's Motion to Dismiss, Stay or Transfer This Action Pursuant to the First-to-File Rule.[1]

INTRODUCTION

By this action, plaintiffs 3M Innovative Properties Company and 3M Company (together, "3M") a global corporation with over eighteen billion dollars in worldwide sales last year, seeks to drag the Gerson Company back to its Minnesota home court to prosecute patent infringement claims. The Gerson Company, a small developer and manufacturer of specialty products located

---

[1] The Gerson Company's Motion to Dismiss, Stay or Transfer this Action Pursuant to the First-to-File Rule is subject to this court's decision on the Gerson Company's companion Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2). If this court grants the Motion to dismiss for lack of personal jurisdiction, the motion to dismiss, stay or transfer this action will be moot.

2561367v1

in Middleboro, thirty-eight miles south of Boston, had already filed suit in federal district court in Massachusetts seeking a declaration of its right to use paint systems products.

By this Motion, the Gerson Company seeks, in accord with the first-filed rule, a dismissal or stay of this Minnesota action. In the alternative, it seeks to transfer this action pursuant to 28 U.S.C. § 1404(a) to the District of Massachusetts for consolidation with the first-filed action.

FACTUAL BACKGROUND

The Gerson Company has for over fifty years been producing a range of disposable products including respiratory masks and, at issue in this case, paint preparation systems. It is a small operation, with offices and a factory in Middleboro, Massachusetts and no other locations. The company takes in under $30 million a year in revenue. Declaration of Ronald L. Gerson, ("Gerson Declaration") at ¶¶1, 14.[2]

The Gerson Company has no ties to Minnesota. It has no offices, employees, inventory, or bank accounts here, and it owns no real estate, leases no property, and owns no personal property in Minnesota. The Gerson Company has no place of business in Minnesota, and is not registered as a foreign corporation to do business in the state. The Gerson Company has never made, had made, used, sold or even offered to sell the Gerson paint preparation system in Minnesota. *Id.* at ¶¶7, 9.

The Gerson Company first became aware that 3M sought to assail its paint system products through reports from concerned customers who had been contacted by 3M employees. *Id.* at ¶4. Customers were informed by 3M that the Gerson Company's paint preparation system

---

[2] In support of this motion, the Gerson Company has submitted the Declaration of Robert L. Gerson, the Declaration of Larry Soest, the Declaration of Robert Jamme, and the Declaration of Kevin D. Conneely.

infringes 3M patents and that 3M would file suit to assure that the paint preparation system would never come to market. *Id.* Indeed, at customer requests, the Gerson Company was required to provide indemnification agreements to protect customers from 3M's threatened lawsuits. *Id.* at ¶6. Consequently, Gerson felt the need to establish its products' reputability so as to assure customers and sales representatives that threats from the industry titan were unfounded. Thus Gerson, as indicated below, sought declaratory relief in Massachusetts federal district court on November 10, 2004. *See* Declaration of Kevin D. Conneely ("Conneely Declaration") Exh. 1, Massachusetts Complaint.

As trumpeted on its webpage, 3M is an $18 billion diversified technology company and one of 30 companies that make up the Dow Jones Industrial Average. More to the point, 3M prides itself on its geographic reach. Indeed, with a sales office in Westborough, Massachusetts and manufacturing facilities in the towns of Chelmsford, Methuen, and Norwood 3M maintains a particularly strong presence in Massachusetts. *See* Conneely Declaration, Exh. 2, Screenshot of 3M Webpage.

Despite having a larger presence in Massachusetts than even the Gerson Company itself, 3M decided to forum shop, , rather than fight the litigation over the paint system where suit was first filed and where both parties have significant ties,. Recognizing that the Gerson Company had first sued for a declaratory judgment related only to one 3M patent, US Patent No. 6,595,441 (the "'441 patent") 3M decided to grant a covenant not to sue the Gerson Company on that patent. *See* Conneely Declaration, Exh. 7, 3M Covenant Not to Sue on '411. 3M knew that it not only had more patents arguably in reach of the same disputed paint preparation systems territory, but that it had another related, but undisclosed, patent soon to be issued.

The Gerson Company correctly read the covenant offer as a ploy to undercut first-to-file jurisdiction in Massachusetts. Further, the Gerson Company recognized that 3M's covenant not to sue under a single patent would not forestall infringement claims against paint preparation systems under a host of related 3M patents. So, to protect itself, the Gerson Company quickly moved by right to amend its Massachusetts Complaint to include every known and knowable 3M patent relating to paint systems. Anticipating that even more patents might soon be issued, the Gerson Company amended its Complaint to cover not only the patents specified, but all "patents related to paint systems" intentionally using the word "including" to indicate that the list was not exhaustive. *See* Conneely Declaration, Exh. 3, Massachusetts Amended Complaint at ¶6.

On the very same day, that Gerson Company filed its Amended Complaint (November 23, 2004), 3M's newest patent, issued as US Patent No. 6,820,824 (the "'824 patent"). *See* '824 patent attached as Exhibit 1 to 3M's Complaint. A patent immediately becomes enforceable against any infringers on the date of issue.[3] Thus, at the time the Gerson Company filed its Amended Complaint seeking a declaration of non-infringement of the (unspecified) patents that 3M alleges the Gerson Company infringes, the '824 patent had issued; and the allegations of the Amended Complaint should be read to include the '824 patent claims. This patent was certainly included in the Gerson Company's Complaint as one of the "patents relating to paint systems." Indeed, in the Massachusetts Supplement to the Amended Complaint, the Gerson Company notes that the inclusive language of its amended Complaint captured the '824 patent, because "at the time of filing [of the first Amended Complaint], the Gerson Company was not yet aware of the

---

[3] *See Archer Daniel Midland Co. v. Ralston Purina Co.*, 321 F.Supp. 262, 264 (S.D. Ill. 1971).

number of this patent." *See* Conneely Declaration, Exh. 5, Memorandum of Law in Support of Massachusetts Supplement to the Amended Complaint, at p.2.

Eager to win what it treated as a race to the courthouse, 3M, to its consternation, was unable to file in Minnesota before the Gerson Company filed, as of right, its Massachusetts Amended Complaint. The Gerson Company was on file in Massachusetts some 3 1/2 hours before 3M. *Compare* Conneely Declaration, Exh. 3, Massachusetts Amended Complaint, *with* Exh. Conneely Declaration, Exh. 6, Date Stamped Cover Letter Indicating Filing By 3M in Minnesota. Thus, this Court need not even decide whether 3M's tactics triumph over substance, as the Gerson Company was the first-to-file even if one were to assume (dubiously) that the relevant filing date would be that of Gerson Company's inclusive Massachusetts Amended Complaint instead of its original Complaint filed over a week before.

It should come as no surprise that 3M's infringement Complaint in Minnesota names the brand new '824 patent as the base for its paint systems infringement claims against the Gerson Company. Yet, this infringement action in Minnesota is against the same products Gerson seeks to protect in its first filed action in Massachusetts and involves one of the 3M "patents relating to paint systems" which are the subject of the Gerson Company's first filed action in Massachusetts. In sum both lawsuits involve the same patent in dispute, the same paint systems, and the same factual and legal dispute.

PROCEDURAL BACKGROUND

On November 10, 2004, in the District of Massachusetts, the Gerson Company filed its Complaint against 3M for a declaratory judgment of non-infringement of the '441 patent. *See* Conneely Declaration, Exh. 1, Massachusetts Complaint. On November 22, 3M filed a covenant

not to sue Gerson for infringement of the '441 but expressly limited the covenant to the '441 patent and no other patent. *See* Conneely Declaration, Exh. 7, 3M Covenant Not to Sue.

On November 23, 2004, the United States Patent and Trademark Office (the "PTO") issued the '824 patent to 3M Innovative Properties Co. (This '824 patent is the only patent that is asserted in 3M's later-filed Complaint in the District of Minnesota, as discussed below).

On November 23, at 10:45 a.m., the Gerson Company filed its Amended Complaint in Massachusetts seeking a declaration of non-infringement of the patents asserted but unspecified by 3M as being infringed by the Gerson Company's paint preparation systems. The Massachusetts Amended Complaint noted that 3M owns a number of patents relating to paint systems, including the '441 and a number of other patents. Specifically, the Amended Complaint alleges "Defendant, 3M, has asserted that paint system products manufactured, offered for sale and/or sold by plaintiff Gerson infringe 3M's patents (hereafter the "3M Patents")." Conneely Declaration, Exh. 3, Massachusetts Amended Complaint, at ¶5. Gerson's allegations include all 3M patents "relating to paint systems" and are not limited to the '441 patent. *Id*. at ¶6.

Later in the day on November 23, 2004, at around 1:15 p.m. Central Time, 3M filed suit for infringement of the '824 paint system patent in the District of Minnesota. *See* Conneely Declaration, Exh. 6, Date Stamped Cover Letter Indicating Filing By 3M in Minnesota. 3M alleges that the patent is owned by the 3M Innovative Properties Co. and that 3M Company is the exclusive licensee of the '824 patent. *See* Conneely Declaration, Exh. 8, 3M Complaint in the District of Minnesota, at ¶8.

On December 7, 2004, the Gerson Company filed a Motion to Supplement the Amended Complaint and to Add a Necessary Party in Massachusetts. In that Motion, the Gerson Company

identifies the '824 patent as one of the "patents relating to paint systems" included in the earlier Massachusetts Amended Complaint.  *See* Conneely Declaration, Exh. 4, Massachusetts Supplement to the Amended Complaint at ¶7.  Of course, the '824 patent was not formally identified by number in the earlier Massachusetts Amended Complaint because at the time of filing, the Gerson Company was not yet aware of the number of this patent.  The Gerson Company moved also to add 3M Innovative Properties Company as a Necessary Party.  *Id*. at ¶1.

On December 7, 2004, 3M filed another covenant not to sue in the District of Massachusetts, but that covenant does not cover the '824 patent, on which the Gerson Company seeks a declaration of non-infringement, invalidity and unenforceability in the Amended Complaint and Supplemental Complaint in the District of Massachusetts.  *See* Conneely Declaration, Exhs. 3, 4 and 9.

## ARGUMENT

I.  **THIS COURT SHOULD DISMISS OR STAY 3M'S SECOND-FILED MINNESOTA ACTION**

"To conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction."  *Northwest Airlines Inc., v. American Airlines, Inc*., 989 F.2d 1002, 1006 (8th Cir. 1992) (affirming district court grant of injunction against second-filed litigation).

Thus the federal district court in Minnesota has followed the first-to-file rule where a first patent action there was filed one month before a second in Delaware; where the two parties were not identical but were "substantially similar;" where "[r]esolution of the Minnesota litigation and the Delaware litigation turn[ed] on the same two patents" and where "the same circumstances

surrounding the alleged infringement [were] central to both actions." *Imation Corp. v. Sterling Diagnostic Imaging, Inc.*, 1998 WL 574164, 47 U.S.P.Q.2d 1745, 1747 (D.Minn. 1998) (the second-comer declaratory judgment plaintiff would "have to disprove the very same infringement allegations in [the first-comers'] Minnesota Complaint").[4]  Similarly, a second-in-time Minnesota breach-of-contract action was transferred to another federal district where an earlier, factually similar, action was pending between the same parties.  *See Slidell, Inc. v. Archer Daniels Midland Co.*, No. Civ. 02-4841, 2003 WL 22050776, at *5 (D.Minn. 2003).[5]

The first-filed rule holds whether the first suit filed is a declaratory judgment action or an infringement action.  *U.S. Fire Insurance Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 489 (8th Cir. 1991) (affirming district court's adherence to first-to-file rule regardless of who was in fact "true plaintiff" in declaratory judgment suit); *see also  Cardiac Science, Inc. v. Koninklijke Philips Electronics N.V.*, No.Civ.03-1064, 2003 WL 22213116 at * 2 (D.Minn. 2003) (following first-to-file rule despite patent litigation over multiple patents having been fragmented by patentee, where "the patents all cover the same device, and it is far from clear that the patents at issue are indeed different from one another").  Indeed, the Gerson Company makes an even stronger case for following the first-to-file rule as, unlike in *Cardiac Science*, the resulting litigation here would proceed conveniently and efficiently in a single venue.

---

[4] In its Motion to Supplement the Amended Complaint, the Gerson Company has moved to add 3M Innovative Properties Company as a necessary party Defendant, which will in fact make the parties in both actions identical.

[5] In *Slidell* the court confirmed that "the filing of the complaint is the key event that commences a civil action" for purposes of first-to-file rule analysis.  *Slidell*, 2003 WL 22050776 at *5.

"Federal comity" is also best served by deferring to the first court in which jurisdiction attaches when serious and potentially fatal personal jurisdiction questions exist in one venue (Minnesota) and not the other (Boston). *See Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985) ("we hesitate to construe the limits of Minnesota's long-arm statute when the identical lawsuit is proceeding in Wisconsin federal district court"). As is clear from its companion Motion to Dismiss for lack of Personal Jurisdiction, the Gerson Company vigorously disputes whether Minnesota may even assert jurisdiction in this matter, whereas 3M's susceptibility to jurisdiction in Massachusetts can hardly be doubted. Indeed 3M has already waived any personal jurisdiction arguments it may have had by agreeing to be bound by the covenant not to sue that it filed in Massachusetts. *See Buckley v. John*, 51 N.E.2d 317, 319 (Mass. 1943) (holding court had personal jurisdiction over an out of state defendant who had offered "a purely voluntary submission on his part to the judgment of the court of one of the principal issues in the suit.")

Moreover, the Gerson Company can hardly be accused of bad-faith or preemptive-strike tactics, the two "red-flags" justifying exception to the first-filed rule. *See Northwest*, 89 F.2d at 1007 (no bad faith or preemptive-strike tactics despite fact that declaratory judgment plaintiff filed first, given the presence because of threatening letter sent to its general counsel). After all, the company headquarters, the primary potential witnesses, and a substantial amount of relevant evidence reside in the Boston suburbs, less than 40 miles from the courthouse. The Gerson

Company had never been sent a single letter suggesting an imminent lawsuit, having been forced instead to rely on chilling reports from nervous customers and sales representatives. [6]

The reason for the rule is clear. "Duplicative litigation in the federal courts should be avoided in order to prevent the unnecessary expenditure of scarce judicial resources." *Slidell*, 2003 WL 22050776 at *4 (D.Minn. 2003) (transferring second-filed action pursuant to first-to-file rule). Indeed, this is the reason why Rule 13(a) makes compulsory any claim that "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim." Fed R. Civ. P. 13(a). *See Southern Construction Co. v. Pickard*, 371 U.S. 57, 60 (1962) (The rule "was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which the counterclaim became the basis of the complaint.")

3M should have brought its claim, alleging infringement of the same paint spraying system that is the subject of the Gerson Company's Massachusetts Declaratory Judgment action, as a counterclaim in that first-file action. The same sales of the same paint spray system are part of the same transaction and occurrence. Seeking to muscle or strong-arm a small competitor by pressing litigation on multiple fronts, 3M essentially attempts to avoid compulsory counterclaims in an appropriate venue. Surely no claim is more logically related to a Declaratory Judgment action for non-infringement than an action for infringement covering the identical product. The basis of 3M's claim in this district is the logical negative of the earlier-filed Massachusetts action.

---

[6] Even where "compelling circumstances" for ignoring the first-to-file rule do exist, a stay is the appropriate remedy. *See Federal Cartridge Co. v. Remington Arms Co.*, No. Civ. 03-6105 ADMAJB, 2003 WL 231001805 at *3 (D.Minn. 2003) (staying second-filed infringement action pending ruling in first-filed declaratory judgment action despite evidence of preemptive strike after receipt of cease-and-desist letter).

2561367v1

10

Thus, the appropriate remedy here is ( (as in *Federal Cartridge*) a stay or (as in S*lidel,l)* a transfer or outright dismissal. *See* 6 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure: Civil § 1418 at 143-144 (1990) ("Ideally, once a court becomes aware that an action on an earlier docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceeding, or will dismiss the claim with leave to plead it in the prior action.")

II.     **IN THE ALTERNATIVE, THIS COURT SHOULD TRANSFER THIS ACTION TO MASSACHUSETTS PURSUANT TO 28 U.S.C. § 1404(a)**

Alternatively, Defendant requests that this court transfer this case to Massachusetts where a factually identical case is already pending. Pursuant to 28 U.S.C. §1404(a), a district court may transfer any civil action to any other district where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a) (2004); *Road Mach. & Supplies Co. v. Fed. Signal Corp.*, No. Civ. 03-3524, 2003 WL 22326577, at *2-4 (D.Minn. 2003) (transferring case "[b]ecause of concerns for judicial economy and because the operative events leading to this lawsuit all occurred" in the venue where an earlier, factually similar proceeding was brought).

"The logical starting point for analyzing the convenience of the parties[,]" the first factor, "is a consideration of their residences in relation to the district chosen by the plaintiff and the proposed transferee district." *GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate and Fin. Services, Inc.*, No.Civ. 02-1224, 2003 WL 1572007 at *4  (D.Minn. 2003) (quoting Moore's Federal Practice § 111.13[1][e][I]).  The Gerson Company, the named Defendant (Plaintiff in the first-filed action) resides in Middelboro, Massachusetts a convenient short drive from the courthouse. Any gains to 3M, a global corporation operating a sales office and multiple

manufacturing facilities in Massachusetts, thus pale in comparison to the benefits to the Gerson Company.

Furthermore, "[o]ne of the central purposes to statutory venue is to ensure that a defendant is not haled into a remote district, having no real relationship to the dispute." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (quotations omitted). Here, the Gerson Company has never made or had made, used, offered to sell, or sold the allegedly infringing paint system in Minnesota. Indeed, no Gerson products have ever been made in Minnesota as all manufacturing for Gerson has occurred in Massachusetts. The Gerson Company has no reason at all to expect being haled into court in Minnesota (putting aside the fact that a colossal competitor makes its home there).

As for convenience of the witnesses, that is "probably the single most important factor for the court since it determines the relative ease of access to sources of proof[.]" *GMAC*, 2003 WL 1572007 at *3. All Gerson Company employees involved with designing, developing, making, and offering to sell the accused products, are located at Gerson Company facilities in Massachusetts. Evidence, such as the plans, drawings, notes and prototypes essential to a patent infringement action, are located at the offices and factory in Middleboro, Massachusetts.[7]

Finally, "courts weight the interest of justice factor very heavily." *GMAC,* 2003 WL 1572007 at *2 (ordering transfer where "operative events" took place in another venue, and where transfer allowed related actions to proceed in the same district, because judicial economy is served by "the avoidance of duplicative or piecemeal litigation"). Clearly,

---

[7] As no discovery has occurred, the Gerson Company is not able to specifically identify all the key witnesses in this case.

here judicial economy favors transfer. The "interest of justice" is best served by the conservation of judicial resources and reduction of expenses inherent in consolidating actions.[8] While no rule prevents 3M from filing duplicative litigation in a preferred district, certainly basic considerations of efficiency and economy for the parties counsels against such litigative wastefulness. 3M should not be rewarded for overtaxing federal judicial resources.

Interestingly, one of the rare reasons to trump the first-to-file rule is a transfer by the first court to save scarce resources, as in the case of multiple action consolidation in a single jurisdiction. *Chex Services Inc. v. iGames Entertainment, Inc.*, No. Civ. 04-1460), 2004 WL 1429828, at *2-3 (D.Minn. 2004) (transferring action to be consolidated with action filed eight days later). But in this case, the first-to-file rule and the rule favoring the conservation of judicial resources actually push towards the same result. To use this court's analysis: "allowing this litigation to proceed in Minnesota is inefficient at best and constitutes a waste of judicial resources at worst. The issues to be resolved in the [two] pending actions are substantially similar, and indeed the findings in each action will have a direct bearing on the issues in the other actions. Thus the [two] actions should proceed in the same court." *Id*. The efficient and the presumptively correct result are one in the same. Thus, whether by staying or dismissing the Minnesota action, or by transferring it to Boston, Gerson Company's first-filed action should be the only one allowed to proceed.

---

[8] Among the considerations that may be relevant to a court in analyzing this factor are the relative familiarity of the two courts with the law to be applied, the relative abilities of the parties to bear the expenses of litigating in a distant forum, judicial economy, the plaintiff's choice of forum, obstacles to a fair trial, and each party's ability to enforce a judgment." *GMAC*, 2003 WL 1572007 at *2. Note that, regarding the plaintiff's choice of forum, whatever the posture of the parties in this action, Gerson is the original plaintiff in the greater litigation.

## **CONCLUSION**

This court should dismiss or stay this action on the grounds that Plaintiff's claims should be asserted as compulsory counterclaims in the first-filed, factually identical, action in Massachusetts. Alternatively, this court should transfer the action to the District of Massachusetts where it can efficiently and conveniently be consolidated with the Gerson Company's Prior Action already pending there.

Dated: December 9, 2004

s/ Kevin D. Conneely_____
Kevin D. Conneely (192703)

LEONARD, STREET AND DEINARD
Professional Association
150 South 5th Street
Suite 2300
Minneapolis, MN  55402
(612) 335-1829
(612) 335-1657
kevin.conneely@leonard.com

and

Robert L. Kann
Edward J. Dailey

BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
(617) 443-9292

Attorneys for Defendant
Louis M. Gerson Co., Inc.